PEOPLE v. RIDDLE.

1. CRIMINAL LAW—CREDIBILITY—QUESTION FOR JURY.
The credibility of witnesses in a criminal case is for the jury.

2. SAME—PERJURY—ENTICING CHILD FOR IMMORAL PURPOSES.
Practice of ordering complaining witness held for perjury during trial of another on a charge of enticing a child for immoral purposes, which obviously had the result of causing the witness to reconsider and change his testimony, while not made the basis of reversal where case is reversed on another ground, is not approved (Act No. 328, § 145a, Pub. Acts 1931, as added by Act No. 174, Pub. Acts 1935, and amended by Act No. 88, Pub. Acts 1939).

3. SAME—ENTICING CHILD FOR IMMORAL PURPOSES—GROSS INDECENCY—INTENT—EVIDENCE OF UNRELATED OFFENSE.
In prosecution of man specifically charged with having suggested to a 15-year-old boy that he submit to an act of sexual intercourse with an adult female, it was prejudicial and reversible error to receive testimony of the boy tending to show the commission of an unrelated act of gross indecency committed by the defendant several years before on the theory it was background to the situation, as motive or intent was not a material element of the crime charged and the earlier act, if true, could not be admitted for purpose of showing motive or intent or scheme, plan or system of defendant in doing act in question that would be material (3 Comp. Laws 1929, § 17320; Act No. 328, § 145a, Pub. Acts 1931, as added by Act No. 174, Pub. Acts 1935, and amended by Act No. 88, Pub. Acts 1939).

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am. Jur., Appeal and Error, § 863.
[3, 4] 20 Am. Jur., Evidence, § 309 et seq.
[3, 4] Admissibility of evidence of other crimes, 62 L.R.A. 194. As to the admissibility of such evidence in prosecutions for sexual offenses, see 167 A.L.R. 565. As to evidence of other offenses to prove identity, see 3 A.L.R. 1540, 22 A.L.R. 1016, 27 A.L.R. 357, 63 A.L.R. 602.

4. SAME—OTHER OFFENSES—INTENT.

    The prosecution is not allowed to prove the commission of
    another and distinct offense, though of the same kind with
    that charged, for the purpose of rendering it more probable
    in the minds of the jury that he committed offense charged,
    whatever the ground or pretense for admission of such evi-
    dence, unless the question of intent is involved (3 Comp. Laws
    1929, § 17320).

Appeal from Oakland; Hartrick (George B.), J. Submitted June 17, 1948. (Docket No. 70, Calendar No. 43,845.) Decided September 8, 1948.

Joseph Riddle, Sr., was convicted of crime of suggesting to a minor that he submit to an act of sexual intercourse with an adult female. Reversed and new trial granted.

*Clifton S. Distin,* for appellant.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Clyde D. Underwood,* Prosecuting Attorney, and *Bernard Girard,* Assistant Prosecuting Attorney, for the people.

BOYLES, J. On August 1, 1946, the defendant was brought before a magistrate on a complaint and warrant charging that on or about May 3, 1946, he did accost, entice, solicit or suggest to one Gerald Mahon, a male child under the age of 16 years, that he submit to an act of sexual intercourse with one Blanche Preston, an adult female, contrary to the provisions of section 145a of Act No. 328, Pub. Acts 1931, as added by Act No. 174, Pub. Acts 1935, and as amended by Act No. 88, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 17115-145a, Stat. Ann. 1947 Cum. Supp. § 28.341). At the preliminary examination before the magistrate, Gerald Mahon, admittedly 15 years of age, testified to facts and circumstances which would be sufficient to show probable cause

that the defendant was guilty of said charge. Thereupon the examining magistrate bound the defendant over to the circuit court for trial.

On May 6, 1947, a jury was impanelled and sworn in the circuit court for Oakland county and the defendant was put on trial. Gerald Mahon was sworn as a witness for the people. He readily admitted the act of sexual intercourse, and testified that the circumstances were as follows:

"I have known Mr. Riddle, Sr. (the defendant) for about 5 years. He was a neighbor of mine in Farmington. Our acquaintance has continued over this period of time.

"On May 3, 1946, I think I met Mr. Riddle in Detroit and boarded a bus and came to Pontiac for the purpose of seeing Blanche Preston whom I had met 3 months previously. When we arrived at Blanche Preston's home on Whitmore street she let us in. She was talking on the telephone to Betty Christian and she continued to talk for some time. After she concluded her conversation, we talked to her about the last time she was in Saginaw and her job. On that same day, I had sexual intercourse with her."

However, on the crucial issue as to whether the defendant had "enticed, solicited or suggested" that he commit said immoral act, the witness at first repudiated the testimony he gave at the examination. He testified:

"*Q.* You say you had sexual intercourse with Blanche Preston. Whose idea was it?

"*A.* I don't know if it was anyone's idea.

"*Q.* Did anyone suggest it to you?

"*Mr. Dohany* (attorney for defendant): Object to that, if the court please. That is purely leading. I think the conversation is the thing that is material.

"*The Court:* I think the facts and circumstances should be given. Don't be afraid Gerald, you can tell

your story. Take your time and tell your story the way it was.

"*Q.* What were the circumstances preceding the act of intercourse?

"*A.* I can't remember. There was nothing that happened before. * * *

"No one suggested to me that I engage in an act of intercourse with Blanche Preston."

Thereupon the prosecutor asked that Gerald Mahon be declared a hostile witness and that he be allowed to cross-examine. The court excused the jury, and the prosecutor read to the witness and the court the testimony given by this witness before the examining magistrate. In it, the witness had stated in substance that the defendant had suggested to him that he go into the bedroom with Blanche Preston and have sexual intercourse with her. Still in the absence of the jury, the trial judge in open court then questioned Gerald Mahon as follows:

"By the court:

"*Q.* Do you remember that testimony, Gerald?

"*A.* Yes, I remember it.

"*Q.* Is that testimony true or false?

"*A.* It was false.

"*The Court:* I will order him held for perjury.

"*Mr. Girard* (assistant prosecuting attorney): In view of the hostility of the witness, the prosecution cannot prove their case.

"*The Court:* Have the officer arrest him and hold him at this time.

"*Mr. Dohany:* If the court please, I think you will find he was under pressure at the time of the examination.

"*The Court:* That is up to him to prove.

"*Gerald:* How can I prove that?

"*The Court:* He should be held for perjury, no question about that, one place or the other. You can't tell two different stories and get away with it high wide and handsome. Not in this court. I am not

willing to dismiss the case yet, Mr. Girard. I think we had better find out what this is all about. I think you ought to move for a continuance of this case until we find out what the story is all about.

"*Mr. Girard:* I so move.

"*The Court:* And I think you ought to issue a warrant for this young man for perjury. Just on the statement that the other is false."

The trial judge then announced that they would take a recess. Whatever occurred during the recess is not disclosed by the record. The jury was recalled to the courtroom, Gerald Mahon was recalled to the witness stand, and then testified as follows:

"I met Mr. Riddle in Detroit on the 3d day of May, 1946, about one p.m.   *   *   *   Joe then asked me if I wanted to go to Pontiac and see Blanche Preston and tear off a little sliver. We came to Pontiac. I reported to my probation officer and then went to Blanche's house. She was talking on the 'phone to Betty Christian. I asked if I might talk with her and we talked for about 15 or 20 minutes. Mr. Riddle and Blanche went into the bedroom and were there all the time I was talking on the 'phone. Just before I finished, Mr. Riddle and Blanche came out and he wanted to speak to Betty. He said to me, 'Go ahead and take Blanche into the bedroom,' so I went into the bedroom with her and had sexual intercourse. When we came out, Mr. Riddle gave Blanche the money and then we went back to Detroit."

The foregoing constitutes the testimony adduced by the prosecution to prove the commission of the alleged offense. The defendant, sworn in his own behalf, denied that he had suggested to Gerald Mahon that he submit to an act of sexual intercourse with Blanche Preston. The entire circumstances, including the action of the court in ordering that Gerald Mahon be held for perjury, after which he

changed his testimony, was disclosed to the jury. The jury returned a verdict of guilty, and from the sentence of one year in the county jail the defendant appeals.

The defendant seeks reversal on the ground that the verdict is "against the great weight of evidence." It must be conceded that the credibility of the witnesses was for the jury. This Court does not approve of the practice indulged in by the trial court during the trial in ordering the complaining witness held for perjury, which obviously had the result of causing the witness to reconsider and change his testimony. However, the conviction must be set aside and a new trial granted for another reason hereinafter shown, and the foregoing situation is not likely to arise again at a new trial.

When Gerald Mahon had been recalled to the witness stand to testify further, the prosecuting attorney sought to obtain from the witness facts showing the previous relationship between the witness and the defendant, and in so doing elicited from the witness certain facts tending to show the commission of another act of gross indecency by the defendant several years previously. The record discloses that the following occurred:

"Mahon, Gerald, recalled to the witness stand, testified as follows:

"I met Mr. Riddle when I was 12 or 13 years old. I had not seen him for about three years until this present trouble came up. We had maintained a close relationship previously.

"*Q.* Will you tell this court and jury what type of association that was?

"*Mr. Dohany:* If the court please, I object to this as being irrelevant, and immaterial, anything prior.

"*The Court:* I think it is preliminary. You may go ahead.

"*Q*. After you first met Mr. Riddle, which I think you testified was when you were about 13 years old, did you ever go anywhere with him where girls were present?

"*Mr. Dohany*: Object to that, if the court please. That has nothing to do with this case. That is for the purpose of prejudicing the jury in this case.

"*The Court*: I don't think you have a right to state that Mr. Dohany. Counsel has a right to make his examination. I think he has a right to ask what his association was with this man as a background preliminary to the situation.

"*Mr. Dohany*: This is one particular charge and anything that preceded that has nothing to do with this case.

"*The Court*: I think, the relationship, he has a right to have that as preliminary.

"*Mr. Dohany*: I take exception to that.

"I was with Mr. Riddle once in about 1942.

"*Q*. What transpired on that occasion?

"*Mr. Dohany*: If the court please, I know what he is going to ask this for and if it isn't prejudicial, I don't know what would be. He is trying to inject in this case enough prejudice so that the jury won't be fair minded.

"*The Court*: I think the jury will be fair minded and I don't think you ought to keep saying that it will prejudice the jury.

"*Mr. Dohany*: I am wondering what case we are trying here?

"*The Court*: You are anticipating something that may never happen.

"*Mr. Dohany*: I want to take care of that at this time.

"*Q*. What transpired on that occasion?

"*A*. I was at Mr. Riddle's home one day. I worked for him a little bit answering 'phone calls, after I got to know him, business 'phone calls and kind of straightened up his house a little bit for him and he came home and drank a little bit and he was over on the couch across from me and after he sat there

awhile, he took out his penis and asked me to come over.

"*Q.* When was the next—

"*Mr. Dohany:* At this time I am going to ask for a mistrial. * * * That jury right now is going to convict him of something that happened in 1943.

"*The Court:* I think, Mr. Girard, we ought to be careful and not bring in any other offenses.

"*Mr. Dohany:* It is before the jury now and they can't get it out of their minds, and I ask for a mistrial at this time.

"*The Court:* I will deny the motion."

This testimony was prejudicial to the defendant and should not have been received. The defendant was specifically charged with having suggested to Gerald Mahon that he submit to an act of sexual intercourse with one Blanche Preston, an adult female. No issue as to intent was involved and it was prejudicial error to receive testimony tending to show the commission of a previous act of gross indecency committed by the defendant, on the theory that it was merely "as a background preliminary to the situation." That testimony referred to an unrelated offense said to have been committed by the defendant nearly four years previously. The defendant's motive or intent in suggesting that Gerald Mahon submit to an act of sexual intercourse with Blanche Preston was not a material element in the instant case, and the earlier act of the defendant, if true, could not be admitted for the purpose of showing motive or intent. Nor is there any room for concluding that any "scheme, plan or system" of the defendant in doing the act in question would be material to the case. See 3 Comp. Laws 1929, § 17320 (Stat. Ann. § 28.1050).

"The general rule is well settled that the prosecution are not allowed to prove the commission of another and distinct offense, though of the same kind

with that charged, for the purpose of rendering it more probable in the minds of the jury that he committed the offense for which he is on trial; and this would be the natural and inevitable effect upon the minds of the jury, of the admission of such evidence, on whatever ground or pretense it might be admitted." *People* v. *Schweitzer,* 23 Mich. 301.

"It has long been the rule in this State that upon a trial for felony evidence of other distinct offenses will not be permitted unless the question of intent is involved." *People* v. *Trudell,* 220 Mich. 166.

In some cases an exception to the general rule has been recognized as to certain sex crimes, under some circumstances. An examination of these cases reveals the distinction between them and the case at bar. In the leading case of *People* v. *Jenness,* 5 Mich. 305, the defendant was charged with having committed incest with his sister's daughter. In upholding the admission of evidence of previous acts of sexual intercourse between the defendant and his sister's daughter, the court said:

"This offense can only be committed by the concurrent act of two persons of opposite sexes; and the assent or concurrence of one is as essential to the commission of the offense as that of the other; and, as a general rule, *both* must be guilty, or *neither.*"

The above rule was followed in subsequent cases. See *People* v. *Cease,* 80 Mich. 576; *People* v. *Skutt,* 96 Mich. 449. The difference in the case at bar is apparent. Defendant's suggestion to the minor that he come over to the couch where the defendant was exhibiting his penis is not the same or a similar offense to the one here involved, namely, that the defendant suggested to the minor that he have sexual intercourse with an adult woman. The same distinction applies to other cases where the admission of proof of prior acts of sexual intercourse has been allowed. In cases involving statutory rape, where proof of

previous acts has been allowed, the distinction between those situations and the instant case is pointed out in *People* v. *Swift,* 172 Mich. 473, as follows:

"Where previous acts of intercourse between the same parties are shown, it is something more than merely proving the commission of similar offenses—it is rather proving a repetition of the same offense between the same parties, identical in its criminal features."

More applicable to the present case is the conclusion reached in *People* v. *Dean,* 253 Mich. 434, as follows (syllabus):

"In prosecution for committing act of gross indecency with boy in violation of 3 Comp. Laws 1929, § 16851, defendant's 'motive, intent, the absence of, mistake or accident on his part' was not involved, nor may it be said that in committing said offense he was acting in conformity with any 'scheme' or 'plan' theretofore formulated by him, and therefore testimony of other similar offenses committed with other persons previous to commission of offense charged was not admissible under criminal code (3 Comp. Laws 1929, § 17320)."

The record does not support appellee's claim that the statement made by witness Gerald Mahon about the previous offense was volunteered by him and unexpected by the prosecutor. The prosecutor by his questions led up to it deliberately, apparently knowing what was coming, and over the repeated objections of counsel for the defendant. The prosecutor in his brief concedes "it is true that technically such testimony was inadmissible," but argues that it was not prejudicial. Under the cricumstances of the case, where conviction depended upon the credibility to be afforded by the jury to the testimony of this minor and the defendant, receiving the testi-

mony as to an earlier act of gross indecency by the defendant was reversible error.

The conviction and sentence are set aside and a new trial granted.

BUSHNELL, C. J., and SHARPE, REID, NORTH, DETH-MERS, BUTZEL, and CARR, JJ., concurred.